No. 21-4088

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

DAVID K., KATHLEEN K.,
AND AMY K.,

Plaintiffs – Appellees,

v.

UNITED BEHAVIORAL
HEALTH and ALCATEL-
LUCENT MEDICAL
EXPENSE PLAN FOR
ACTIVE MANAGEMENT
EMPLOYEES,

Defendants – Appellants.

On Appeal from the United States District Court
for the District of Utah

BRIEF FOR THE SECRETARY OF LABOR AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFFS-APPELLEES ON APPELLEES' ISSUE 2

SEEMA NANDA
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
  for Plan Benefits Security

THOMAS TSO
Counsel for Appellate
and Special Litigation

SUSANNA BENSON
Senior Attorney
Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
200 Constitution Ave. NW, N.-4611
Washington, DC 20210
(202) 693-5682

RACHEL UEMOTO
Trial Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................iii

QUESTIONS PRESENTED........................................................ 1

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO
FILE ............................................................................................. 2

STATEMENT OF THE CASE .................................................... 3

    A.    Factual Background ................................................. 3

    B    Procedural History ................................................. 6

SUMMARY OF THE ARGUMENT ......................................... 10

ARGUMENT .............................................................................. 12

I.    The District Court Correctly Assessed Full and Fair Review
Requirements for Health Claims ……………………………………12

    A.    United Was Required, and Failed to Engage with Claimant's
Supporting Evidence ........................................... 13

        1.  The District Court Correctly Followed Circuit
Precedent ....................................................... 13

        2.  *Mary D.* Decision Is Neither Binding Nor Persuasive..... 16

    B.    Regulations Bar the Use of Evidence Not Provided to
Claimants During Internal Review ..................... 23

II.    District Courts May Account for Inconsistency in Denial
Letters ................................................................................... 30

## TABLE OF CONTENTS-continued:

CONCLUSION ........................................................................... 34

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Federal Cases:

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ..........................................................................3, 19

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003) ................................................................................15

*D.K. v. United Behavioral Health*,
No. 2:17-cv-01328, 2021 WL 2554109 (D. Utah June 22, 2021) . passim

*Elliot v. Williams*,
248 F.3d 1205 (10th Cir. 2001).......................................................16 n.6

*Firestone Tire & Rubber Co. v. Brunch*,
489 U.S. 101 (1989) ................................................................................31

*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*,
491 F.3d 1180 (10th Cir. 2007), *abrogated on other grounds by Metro.
Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ...................................29, 30

*Foster v. PPG Indus., Inc.*,
693 F.3d 1226 (10th Cir. 2012).........................................................8 n.4

*Gaither v. Aetna Life Ins. Co.*,
394 F.3d 792 (10th Cir. 2004)...................................................... passim

*Gilbertson v. Allied Signal, Inc.*,
328 F.3d 625 (10th Cir. 2003)................................................................14

*Glista v. Unum Life Ins. Co. of Am.* ,
378 F.3d 113 (1st Cir. 2004) ........................................................ passim

*K.K. v. United Behavioral Health*,
No. 2:17-cv-01328, 2020 WL 262980 (D. Utah Jan. 17, 2020) ..............3

iii

**Federal Cases-continued:**

*Killen v. Reliance Standard Life Ins. Co.,*
  776 F.3d 303 (5th Cir. 2015) ................................................................. 30

*Lauder v. First Unum Life Ins. Co.,*
  284 F.3d 375 (2d Cir. 2002) ................................................................. 30

*Mary D. v. Anthem Blue Cross Blue Shield,*
  778 F. App'x 580 (10th Cir. 2019)(unpublished) ........................ passim

*Metro. Life Ins. Co. v. Glenn,*
  554 U.S. 105 (2008) ................................................................................ 29

*Rasenack ex. rel. Tribolet v. AIG Life Ins. Co.,*
  585 F.3d 1311 (10th Cir. 2009) ........................................................... 13

*Raymond M. v. Beacon Health Options Inc.,*
  463 F. Supp.3d 1250 (D. Utah, 2020) ................................................ 14

*Rizzi v. Hartford Life & Acc. Inc. Co.,*
  383 F. App'x 738 (10th Cir. 2010)(unpublished) .......................... 13, 14

*Robinson v. Aetna Life Ins. Co.,*
  443 F.3d 389 (5th Cir. 2006) ............................................................... 30

*Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan,*
  704 F.3d 362 (5th Cir. 2013) ............................................................... 30

*Salomaa v. Honda Long Term Disability Plan,*
  642 F.3d 666 (9th Cir. 2011) ............................................................... 31

*Sec'y of Labor v. Fitzsimmons,*
  805 F.2d 682 (7th Cir. 1986) ................................................................. 2

*Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan,*
  686 F.3d 1135 (10th Cir. 2012) ........................................................... 27

**Federal Cases-continued:**

*Tracy O. v. Anthem Blue Cross Life & Health Ins.*,
807 F. App'x 845 (10th Cir. 2020)...........................................................32

*Wenner v. Sun Life Assur. Co. of Can.*,
482 F.3d 878 (6th Cir. 2007)...................................................................31

**Federal Statutes:**

Employee Retirement Income Security Act of 1974, (Title I).
as amended, 29 U.S.C. 1001 et seq.,

Section 2, 29 U.S.C. § 1001............................................................................1

Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ......................................6

Section 503, 29 U.S.C. § 1133....................................................... passim

Section 503(1), 29 U.S.C. § 1133(1) ........................................................25

Section 503(2), 29 U.S.C. § 1133(2) ........................................................12

Section 505,  29 U.S.C. § 1135.................................................................12

Affordable Care Act (ACA):

42 U.S.C. § 300gg-19(a)(2)(A)...................................................................25

**Miscellaneous:**

29 C.F.R. § 2560.503-1 (2003) .....................................................1, 6, 12, 18

29 C.F.R. § 2560.503-1(g) ...........................................................................17

29 C.F.R. § 2560.503-1(g)(1)(i) ...........................................................22, 25

29 C.F.R. § 2560.503-1(g)(1)(v)......................................................17, 18, 22

**Miscellaneous-continued:**

29 C.F.R. § 2560.503-1(g)(1)(vi) ........................................................... 22

29 C.F.R. § 2560.503-1(g)(1)(vii) ..........................................................17

29 C.F.R. § 2560.503-1(g)(1)(vii)(A) .............................................17, 18, 20

29 C.F.R. § 2560.503-1(g)(1)(v)(B) (2001) ...........................................21

29 C.F.R. § 2560.503-1(g)(1)(vii)(B) (2016) .........................................21

29 C.F.R. § 2560.503-1(h)(1) ...............................................................18

29 C.F.R. § 2560.503-1(g)(2) ...............................................................18

29 C.F.R. § 2560.503-1(h)(2)(iii) ....................................................10, 13

29 C.F.R. § 2560.503-1(h)(2)(iv) ....................................................10, 13

29 C.F.R. § 2560.503-1(h)(4)(i) .......................................................26, 27

29 C.F.R. § 2560.503-1(j)(1) (2001) ......................................................22

29 C.F.R. § 2560.503-1(j)(2) (2001) ......................................................22

29 C.F.R. § 2560.503-1(j)(3) (2001) ......................................................22

29 C.F.R. § 2590.715-2719(b)(2)(ii)(C) ...................................10, 11, 13, 26

29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1) .........................13, 25 n.7, 26, 28

29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(2) .............10, 11, 13, 25 n.7, 26, 28

Final Rule, Claims Procedure for Plans Providing Disability Benefits,
    81 Fed. Reg. 92316 (Dec. 19, 2016) ............................................. passim

**Miscellaneous-continued:**

81 Fed. Reg.  92320 (Dec. 19, 2016)...................................................21

81 Fed. Reg.  92320 n.13 (Dec. 19, 2016)..............................20, 22

81 Fed. Reg.  92321 (Dec. 19, 2016)...............................................22

81 Fed. Reg.  92325 (Dec. 19, 2016)......................................26, 27

81 Fed. Reg.  92341 (Dec. 19, 2016)......................................18, 20

80 Fed. Reg. 72017 (2015)..............................................................27

The 2010 Interin Final Rule (IFR) was amended in 2011,
  76 Fed. Reg. 37207 (June 24, 2011) ..................................25 n.7

75 Fed. Reg. 43320 (July 23, 2010).........................................26

Brief for the United States as Amicus Curiae Supporting Petitioner at
  *16-*17, *Black & Decker v. Nord*, 538 U.S. 822 (2003), No. 02-469,
  2003 WL 721551 ...........................................................16 n.5

Brief for the Secretary of Labor as Amicus Curiae Supporting
  Petitioner, *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*,
  561 F.3d 887 (8th Cir. 2009) (No. 08-2523)..........................26

## QUESTIONS PRESENTED

UnitedHealthcare, Inc. and its affiliate, United Behavioral Health (collectively, United) serve as claims administrators for an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.* Plaintiff D.K. is a plan participant. His daughter, Plaintiff A.K., is a plan beneficiary. A.K. suffered from mental health and substance use disorders and sought various treatments, including weekly individual therapy, psychiatric emergency room visits, partial hospitalization programs, and finally, long-term residential treatment. During the internal appeals process, United denied Plaintiffs' claim for benefits and determined that A.K.'s long-term residential treatment was not medically necessary for differing reasons. The district court concluded that United's denial was arbitrary and capricious. In reaching this conclusion, the court determined that United did not sufficiently engage with claimants' evidence from healthcare professionals and improperly relied on evidence it did not reference in its denial letters; it also considered that United provided inconsistent rationales in its denial letters.

The Secretary of Labor (Secretary) addresses the following questions presented:

1. Whether the standards for a "full and fair" review of health claims under ERISA (a) require a collaborative process between a claimant and the fiduciary that fairly engages with claimant's supporting evidence, and (b) bar the use of evidence to defend a denial in court that was not provided to a claimant during the internal appeals process.

2. Whether courts may consider the insurer's inconsistent denial letters during its internal review processes in determining whether an insurer's decision is arbitrary and capricious under ERISA.

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Secretary bears primary responsibility for interpreting and enforcing Title I of ERISA and is responsible for "assu[ring] the . . . uniformity of enforcement of the law under the ERISA statutes." *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 691-93 (7th Cir. 1986) (en banc). The Secretary has an interest in enforcing ERISA's mandate to provide "a full and fair review by the appropriate named fiduciary of the decision denying the claim," consistent with the Department's

2

regulations, 29 U.S.C. § 1133, and ensuring that the claims process meets standards of "basic fiduciary accountability," 81 Fed. Reg. 92316, 92321, Final Rule, Claims Procedure for Plans Providing Disability Benefits, (Dec. 19, 2016). Because fiduciaries are required to treat each benefit determination as a fiduciary decision, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004), the Secretary has an interest in ensuring that courts fairly engage with participants' evidence and weigh procedural deficiencies when determining whether a benefit denial was arbitrary and capricious.

## STATEMENT OF THE CASE

A.    **Factual Background**[1]

A.K. and her parents, D.K. and K.K., brought this action seeking an award of benefits under a group health plan governed by ERISA. *K.K. v. United Behavioral Health*, No. 2:17-cv-01328, 2020 WL 262980, at *1-2 (D. Utah Jan. 17, 2020). Plaintiffs allege that United wrongfully denied their claim for plan benefits in connection with A.K.'s treatment at the Discovery Ranch for Girls (Discovery), which is a residential

---

[1] The facts are derived from the District Court Opinion and Plaintiffs' Complaint.

3

treatment facility for adolescent girls with mental health conditions. *D.K. v. United Behavioral Health*, No. 2:17-cv-01328, 2021 WL 2554109, at *3-4 (D. Utah June 22, 2021).

A.K.'s mental health issues began in 2010 when she was in the seventh grade and diagnosed with anxiety, attention deficit disorder, and depression. *Id*. at *2. She began to cut herself, and after she severely cut herself in 2012, her parents sent her to a therapist. *Id*. In March 2012, A.K. attempted suicide by cutting herself. *Id*. Over the next two years, A.K. had 11 emergency room visits, five inpatient hospitalizations for a total of 58 days, and underwent several periods of residential treatment at Meridell Achievement Center (Meridell). *Id*. at *3. When she was not in the hospital or a residential treatment center, A.K. was almost always in intensive outpatient or partial hospitalization programs and attended weekly individual and family therapy sessions. *Id*.

In May 2013, while A.K. was a resident at Meridell, her treatment team informed her parents that her illness required longer-term residential treatment. *Id*. Three days after A.K. was discharged from Meridell, she cut herself and nearly severed her femoral artery. *Id*. She

was ultimately re-admitted to Meridell, at which point her treatment team again stressed that A.K.'s parents enroll her in an intensive long-term residential treatment program. *Id*.

A.K.'s parents searched for an intensive long-term program and coordinated with United. *Id*. On November 4, 2013, A.K. began treatment at Discovery. *Id*. United paid Plaintiffs' claims for benefits in connection with A.K.'s treatment at Discovery for only three months and denied the claims for benefits after those three months. *Id*. at *3-4.

During the internal administrative appeals process, United issued a series of four decisions marking four voluntary stages of internal review. *Id*. at *4. The first two internal reviewers found that A.K. appeared to require residential treatment but erroneously denied the claim based on a plan exclusion that United had retroactively eliminated. *Id.* United concedes that the first two reviews and denial letters were erroneous. United Brief (Br.) at *47. The last two reviewers denied the claim on the ground that the treatment was not medically necessary. *Id*. a *4-5.

Following exhaustion of the available internal administrative appeals, D.K. and K.K. obtained an external review of their claim for

benefits. *D.K.*, 2021 WL 2554109, at *5. The external reviewer upheld United's denial of coverage on the basis that A.K.'s treatment at Discovery was not medically necessary. *Id*.

B.   **Procedural History**

Plaintiffs filed this action pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking an order awarding them benefits under the plan. *Id*. at *6. They allege that United violated ERISA section 503, 29 U.S.C. § 1133, and the claims regulation, 29 C.F.R. § 2560.503-1. *Id*. The district court awarded benefits to Plaintiffs in summary judgment. *Id*. at *14.

The district court determined that an arbitrary and capricious standard of review applied and divided the Plaintiffs' arguments challenging United's determination that the treatment was medically unnecessary into two categories: (1) the determination that the "why now" factors[2] for justifying admission into residential care under the

---

[2] To qualify for benefits, the Plan requires a showing of "why now" factors. This element is satisfied when the underlying cause for admission into residential care could not have been "safely, efficiently, or effectively addressed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychological and environmental factors." *D.K.*, 2021 WL 2554109, at *1.

plan were not met, and (2) the determination that A.K.'s care was not covered because it had become "custodial care."[3] *Id.* at *8. The court concluded that United did not abuse its discretion in finding the "why now" factors were not met but noted there was "no sure way to tell if discharge would be appropriate after three months, six months, or a year." *Id.* The court found that United did abuse its discretion in finding that A.K.'s care had become custodial under the plan. *Id.* at *8-9.

In addressing custodial care, the district court noted that Plaintiffs argued that "the mere fact that A.K. was no longer exhibiting self-injurious behavior [did] not demonstrate that her care, for example 'could be rendered . . . by a person not medically skilled' or was 'designed to mainly help the patient with daily living activities.'" *Id.* The court found United had not rebutted this argument and that the care that A.K. received at Discovery included physician visits, counseling, therapy, and medication changes, which were not services that could be rendered by a medically unskilled person. *Id.* at *9. In

_____

[3] The Plan defines "custodial care" as "Treatment or service prescribed by a medical professional, that could be rendered safely and reasonably by a person not medically skilled, or that is designed mainly to help the patient with daily living activities." *D.K.*, 2021 WL 2554109, at *8.

reaching its decision, the district court found that United did not fairly engage with the opinions of A.K.'s treating professionals because the "scant reasoning" in the denial letters consisted only of general and conclusory statements without any specific citation to A.K.'s medical record. *Id.* at *9-10 (citing *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004)).

The court also considered that United had issued five inconsistent denial letters in holding that United's "shifting and inconsistent denial rationale" was arbitrary and capricious. *Id.* at *13.[4] It found that the first two reviewers had stated that it appeared A.K. required long-term residential treatment but that such treatment was excluded under the plan. *Id.* The court stated that the first and second denial letters stood in direct opposition to the final three letters. *Id.* While the last three letters found that medical necessity criteria were not met, the court noted that "the final external denial letter's rationale was different from the third and fourth denial letters." *Id.* The final external denial, unlike the third and fourth denial letters, did not rely on a finding that A.K.'s

---

[4] *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) ("This Court treats the abuse-of-discretion standard and the arbitrary-and-capricious standard as interchangeable in this context").

care had become custodial. Instead, it reasoned that A.K.'s conditions could have been managed at a therapeutic school with intensive outpatient behavioral support. *Id*.

At the summary judgment hearing, United attempted to submit claims administrators' notes, generated during the appeals process, contending they provided a more detailed explanation for why A.K.'s treatment at Discovery was no longer medically necessary. *Id*. at *11. The court did not allow United to submit these notes because they were never provided to Plaintiffs during the internal appeals process, and Defendants did not provide any explanation for this earlier omission. *Id*. The court cited *Glista v. Unum Life Insurance Company of America*, 378 F.3d 113, 115 (1st Cir. 2004). Based on factors discussed in *Glista*, the court concluded that "without any reason justifying their failure to explain their internal reasoning for denying A.K.'s claims, [United] cannot now rely on those rationales." *Id*. at *12. Furthermore, the court reviewed Defendants' internal documents and found that they provided even more evidence that United's denials were arbitrary. *Id*.

## SUMMARY OF THE ARGUMENT

The district court appropriately applied the Secretary's regulations and this Court's case, *Gaither,* to determine that United violated its fiduciary obligation to fully and fairly review Plaintiffs' claim for health benefits as required by the statute, 29 U.S.C. § 1133, and correctly considered United's shifting and inconsistent denial rationales in determining that United's claim denial was arbitrary and capricious.

First, "full and fair review" requires fiduciaries to "take into account" expert opinions supporting the claim, which requires more than simply citing the evidence in a denial letter. 29 C.F.R. § 2560.503-1(h)(2)(iv). Second, full and fair review requires the fiduciary to provide the claimant with all evidence or rationales it relied upon or considered when denying a claim. 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C) (new evidence or rationales to be provided to claimant); 29 C.F.R. § 2560.503-1(h)(2)(iii) (relevant information to be provided to claimant upon request). Evidence or rationales not provided to the claimant during internal review as required by regulation must be provided to the claimant before the final internal adverse benefit determination to give

10

the claimant a reasonable opportunity to respond prior to the decision. 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C).

The district court correctly applied these standards to conclude that United failed to engage with claimants' evidence and properly denied United's attempt to submit in court evidence or rationales that it had not provided to claimants during the internal review process.

Contrary to United's argument, the Secretary's amendments to the claims regulations in 2016 for disability claims did not alter its obligations in its favor. These amendments do not establish different "full and fair" review standards for the health versus disability claims. The district court correctly relied on case-law that pre-dated the amendments and applied the requirements for "full and fair" review that always applied to health and disability claims. The amendments for disability claims and regulations for health claims added under the Affordable Care Act (ACA) at 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C) merely codified these obligations in different ways for health and disability plans.

11

## ARGUMENT

### I. The District Court Correctly Assessed Full and Fair Review Requirements for Health Claims.

Section 503(2) of ERISA requires that "[i]n accordance with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Pursuant to section 503 and his authority to issue regulations in section 505, 29 U.S.C. § 1135, the Secretary issued regulations prescribing full and fair claims procedures that plans must follow at 29 C.F.R. § 2560.503-1.

The district court properly applied *Gaither*'s understanding of "full and fair" review to evaluate United's denial here. *Gaither* and similar cases explained that under "full and fair" review requirements, plan administrators must engage in "meaningful dialogue" with participants and beneficiaries. 394 F.3d at 807. This Court's requirement for a "meaningful dialogue" applies the statutory "full and fair" standard that applies to all employee benefit plans. *See id.* A "meaningful dialogue" means "fiduciaries cannot shut their eyes to readily available

12

information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement." *Id.* The district court did not err in applying *Gaither* to this case. The district court was also correct to disregard evidence not submitted to Plaintiffs during the appeals process, because the relevant regulations require that plans provide new evidence or rationales to claimants. 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1), (2); *see also* 29 C.F.R. § 2560.503-1(h)(2)(iii).

## A.    United Was Required, and Failed, to Engage with Claimant's Supporting Evidence.

### 1. The District Court Correctly Followed Circuit Precedent.

Under ERISA regulations, a full and fair review "takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv). This Court has held that full and fair review requires more than mere references to the claimant's evidence. *See Rasenack ex. rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1326 (10th Cir. 2009) (noting that a mere review of the file is insufficient without engaging with the information supporting the claim); *Rizzi v. Hartford Life &*

13

*Acc. Inc. Co.*, 383 F. App'x 738, 754 (10th Cir. 2010) (unpublished) (noting that the fiduciary must "examine the theory (or theories) [claimant] asserts."). "In sum, ERISA's procedural regulations establish that at the initial denial stage, 'the administrator must provide the claimant with a comprehensible statement of reasons for the denial,' and during the appeals process, must engage in a full and fair review that represents 'a meaningful dialogue between ERISA plan administrators and their beneficiaries.'" *Raymond M. v. Beacon Health Options Inc.*, 463 F. Supp.3d 1250, 167-68 (D. Utah 2020) (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (citation omitted)).

The district court applied this Court's decision in *Gaither* to hold that United should have addressed the claimant's supporting evidence, primarily opinions of her treating physicians, as part of this "meaningful dialogue." *D.K.*, 2021 WL 25541009 at *9-10. *Gaither* held that "fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement." 394 F.3d at 807. Specifically, the district court noted that A.K.'s medical history showed

that she had received extensive out- and in-patient treatment in the 20 months before she was admitted to Discovery, and that several physicians had recommended that A.K. receive long-term care. *D.K.*, 2021 WL 2554109 at *10. United's "scant reasoning" and one "passing reference" to A.K.'s medical history and provider opinions led the court to conclude that this was an instance where a fiduciary "shut their eyes to readily available information" in violation of ERISA. *Id.* (quoting *Gaither*, 394 F.3d at 807).

While plan administrators need not apply "special weight" to healthcare professionals' opinions, they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The district court correctly held that in conducting full and fair review, a fiduciary "takes into account" a claimant's treating provider's opinions by fairly engaging with them, and by being able to demonstrate such engagement in the denial letter provided to the

15

claimant, and not by simply citing the evidence in the appeal denial letter.[5]

### 2. *Mary D.* Decision Is Neither Binding Nor Persuasive.

On appeal, United cites an unpublished decision, *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580 (10th Cir. 2019), to incorrectly argue that the district court erred when it found that United failed "to 'engage' with A.K.'s treating professionals' opinions." United Br. at 39. The district court's determination applied *Gaither* (a disability claim case) to Plaintiffs' claim for health benefits.[6] *Id*. The decision in *Mary D.* declined to apply *Gaither* on the ground that *Mary D.* addressed a health claim. 778 F. App'x at 589 n.7. Specifically, the *Mary D.* court wrote:

> M.D. cites to *Gaither* . . . for the proposition that the Tenth Circuit requires "more" than what she characterizes as a "reassuring pat[ ] on the head" that the plan administrator "considered all of the materials" she submitted. Aplt. Br. 39.

---

[5] The Secretary's longstanding position is that "in an appropriate case, a plan administrator's failure to adequately address the well-reasoned and documented opinion of a physician may violate ERISA and the Secretary's regulations." *Black & Decker Disability Plan v. Nord*, *Brief of the United States as Amicus Curiae Supporting Petitioner*, 2003 WL 721551.

[6] The *Mary D.* decision is unpublished; therefore, it is not binding precedent. *Elliot v. Williams*, 248 F.3d 1205, 1209 (10th Cir. 2001).

But *Gaither*–a case involving the denial of long-term disability benefits, rather than the denial of medical benefits – is inapposite. 394 F.3d at 795. *Compare* § 2560.503-1(g)(1)(v) *with* § 2560.503-1(g)(1)(vii) (requiring denial of disability benefits to include both "explanation of the scientific or clinical judgment for the determination" *and* basis for disagreeing with or not following "views presented by the claimant to the plan of health[ ]care professionals treating the claimant and vocational professionals who evaluated the claimant").

*Id.* The *Mary D.* footnote reaches this conclusion based on an assumption that claims regulations for health and disability claims differ. *Id. Mary D.* cited purported differences between a disability claim determination, which explicitly requires a "discussion of the decision," 29 C.F.R. § 2560.503-1(g)(1)(vii)(A), and the requirements for a health claim determination, which do not use that precise phrase, 29 C.F.R. § 2560.503-1(g)(1)(v). *Id.* Essentially, *Mary D.* appears to summarily conclude that because that regulatory language is not identical for disability and group health claim determinations under 29 C.F.R. § 2560.503-1(g) (governing manner and content of notification of benefit determinations), DOL's regulations, their statutory underpinnings, and related case-law cannot be interpreted similarly for disability and group health claims. *Id. Mary D.*'s

17

footnote discussion of *Gaither* deserves reconsideration for several reasons.

Such a conclusion is not supportable. First, while subsection (g) separates regulations for disability and group health claims, many relevant provisions, like 29 C.F.R. § 2560.503-1(h)(1) and (2), apply to "*[e]very* employee benefit plan*,*" thereby subjecting group health and disability claims to the exact same requirements for "full and fair" review of adverse benefit determinations on appeal. 29 C.F.R. § 2560.503-1(h)(1) (emphasis added).

Second, *Mary D.* declined to apply *Gaither* based on regulatory differences that resulted from the Department's 2016 amendments to the claims regulations, which related only to disability claims regulations. 778 F. App'x at 589 n.7. The 2016 amendments, among other changes, added 29 C.F.R. § 2560.503-1(g)(1)(vii)(A), which imposes requirements for discussing adverse benefit decisions or benefit determinations on review. 81 Fed. Reg. 92341 (Dec. 19, 2016). These requirements are not expressly included in 29 C.F.R. § 2560.503-1(g)(1)(v), which governs adverse benefit determinations by group health plans.

18

But the 2016 amendments postdate *Gaither*, which was decided in 2004. When this Court decided *Gaither*, disability and group health plans were subject to the *same regulatory language*, negating any suggestion that the *Gaither* panel intended for different standards to apply for disability and health claims with respect to the insurer's obligation to address the participant's evidence. *See Davila*, 542 U.S. at 220 (interpreting 29 CFR § 2560.503–1 (2003) as applying "equally to health benefit plans and other plans" without "distinctions between medical and nonmedical benefits determinations."). The disability regulations themselves may have changed since 2016, but that does not change *Gaither*'s analysis of uniform rules that applied to group health claims and disability claims and continue to apply unchanged to group health claims today.

Third, any variation in the wording of the regulations with respect to disability and health plans does not change the materially similar full and fair review standards required by the regulations. The *Mary D.* panel misunderstood the intended impact of the Department's 2016 amendments to the claims regulation. The 2016 amendments added language expressly

19

requiring that insurers issuing adverse benefit determinations for disability benefits or benefit determinations on review include a "discussion of the decision," such as the basis for disagreeing with any disability determination by "health care professionals treating a claimant to the extent the determination or views were presented by the claimant to the plan." 81 Fed. Reg. 92316, 92320, 92341-42. (Dec. 19, 2016); 29 C.F.R. § 2560.503-1(g)(1)(vii)(A). In the preamble to the amendment, the Department clarified that this new language did *not* create a new substantive requirement because "the existing claims procedure regulation for disability claims *already* imposes a requirement that denial notices include a reasoned explanation for the denial, noting that several federal courts concluded that a failure to provide a discussion for the decision or specific criteria relied upon in making the adverse benefit determination could make a claim denial arbitrary and capricious." 81 Fed. Reg. 92320 n.13 (emphasis added). The amendment made explicit a requirement derived from the "full and fair" review standard because the Department found, "based on its experience enforcing the claims procedure requirements and

its review of litigation activity, . . . that some plans [were]

providing disability claim notices that [were] not consistent with

the letter or spirit of the Section 503 Regulation." 81 Fed. Reg.

92320. It decided that making this requirement express would

"reinforc[e] the need for plan fiduciaries to administer the plan's

claims procedures in a way that is transparent and that

encourages an appropriate dialogue between a claimant and the

plan." *Id.*

      Though the 2016 amendments only applied to procedures for

disability claims, they did not result in differing standards for disability

and group health claims. Both disability and group health plans are

still subject to the *same underlying regulatory language* that is relevant

here. *Compare, e.g.,* 29 C.F.R. § 2560.503-1(g)(1)(vii)(B) (2016) *with* 29

C.F.R. § 2560.503-1(g)(1)(v)(B) (2001) (disability and group health plans

include the same requirements for denials based on medically

necessity). In the preamble to the 2016 amendments, the Department

relied on the existing requirements applicable to both disability and

group health plans and the general "full and fair" review standard to

identify which existing requirements the regulations should expressly

highlight for disability claims. 81 Fed. Reg. 92320 (summarizing

existing claim procedures applicable to group health and disability

benefit plans since 2001 at 2560.503-1(g)(1)(i)-(iv) (notification of benefit

determination); (j)(1)-(3)) (notification of benefit determination on

appeal)).

The 2016 amendments thus did not add a new requirement that

administrators provide reasoned explanation only for denials in

conducting full and fair review of disability claims. Instead, they

emphasized and made explicit a requirement that was derived from the

general standards of "full and fair" review under section 503 and

regulations applicable to both health and disability claims. 81 Fed. Reg.

92320 n.13; 92321 ("In the Department's view, this is not a new

substantive element"); *see also* 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv), (j)(1)-

(3) (2001) (governing benefit determinations and benefit determinations

on review).

Accordingly, long before the 2016 amendments added a provision

expressly requiring that plans provide a "discussion of the decision"

when denying a disability claim, plans denying either a group health

claim or a disability claim were already required to provide a reasoned

explanation of the denial. The Department's claims procedure regulations, therefore, support engagement with healthcare professionals' opinions when making benefit determinations, regardless of whether the claim is for disability or group health plan benefits. *Mary D.* improperly distinguishes between health and disability claims when no such distinction exists as to the full and fair review of claims.

In conclusion, in finding that United cited A.K.'s treating physicians' opinions but abused its discretion because it did not fairly engage with those opinions, the district court properly applied the standards of full and fair review under ERISA. The district court correctly recognized that in conducting full and fair review, a fiduciary "takes into account" a claimant's treating provider opinions by fairly engaging with them, not by simply citing the evidence in the appeal denial letter.

> **B.    Regulations Bar the Use of Evidence Not Provided to Claimants During Internal Review.**

At the summary judgment hearing, United sought to present notes from claims administrators that it argued were more substantive than the denial letters and explained "in more detail A.K.'s medical history and the reason why coverage for Discovery was no longer

23

medically necessary." *D.K.*, 2021 WL 2554109 at *11. Finding no Tenth

Circuit case that addressed whether a court could consider documents

that purported to support a plan's denial decision that were not

provided to participants, the district court relied on a First Circuit case,

*Glista*, 378 F.3d at 115. *Id.* at *11-12.

The *Glista* court found that a plan administrator violated ERISA

"by relying on a reason in court that had not been articulated to the

claimant during its internal review." 378 F.3d at 130. Despite

concluding that the fiduciary violated the claims regulation, the *Glista*

court laid out factors to consider in determining "whether a plan

administrator may defend a denial of benefits on the basis of a different

reason than that articulated to the claimant during the internal review

process." *Id.* at 115. Specifically, the court considered:

> (1) would "traditional insurance law place[ ] the burden on
> the insurer to prove that the applicability" of a similar
> benefits exclusion rationale; (2) did the plan "expressly
> provide that participants 'must receive a written explanation
> of the reasons for the denial'"; (3) did the administrator give
> an "explanation for why it did not explain earlier" its
> unstated reason for denying the claim; and (4) did the facts
> of the situation require that the controversy be resolved
> quickly?

24

*D.K.*, 2021 WL 2554109 at *11 (quoting *Glista*, 378 F.3d at 131). Based on these factors, the district court found that United could not rely on evidence not provided to participants in the internal review process. *Id.* at *12.

The district court reached the correct result fully consistent with the relevant regulations interpreting the "full and fair" requirement. Pursuant to ERISA, a plan administrator shall provide a claimant with notice of "the specific reasons for [the] denial" of a claim for benefits. 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1)(i). The passage of the ACA added that covered group health plans "shall update such process in accordance with any standards established by the Secretary of Labor." 42 U.S.C. § 300gg-19(a)(2)(A). In updating those standards, the Departments of Labor, Treasury, and Health and Human Services issued an interim final rule, 75 Fed. Reg. 43329 (July 23, 2010),[7] that

---

[7] The 2010 Interim Final Rule (IFR) was amended in 2011, 76 Fed. Reg. 37207 (June 24, 2011) and finalized in 2015, 81 Fed. Reg. 92316 (Nov. 18, 2015). Between 2010 and 2015, there were no substantial changes to the full and fair review requirements provided in the IFR at 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1) and (2) that plans must provide claimants, free of charge, with new evidence or rationales.

provided among other rules, clarifications of full and fair review,

requiring the plan to:

> [P]rovide the claimant . . . with any new or additional
> evidence considered, relied upon, or generated by the plan or
> issuer . . . in connection with the claim; such evidence must
> be provided as soon as possible . . . to give the claimant a
> reasonable opportunity to respond . . .

29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1). This requirement applies "as

part of the internal claims and appeals process," meaning before

litigation. 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C). In the preamble, the

Department noted that, for all ERISA plans, it "interprets 29 U.S.C. §

1133 and the DOL claims procedure regulation as already requiring

that plans provide claimants with new or additional evidence or

rationales upon request and an opportunity to respond in certain

circumstances." 75 Fed. Reg. 43329, 43334 n.7 (July 23, 2010) (citing

Amicus Br. of the Secretary of Labor, *Midgett v. Wash. Grp. Int'l Long*

*Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009)).

In the 2016 amendments to claims regulations for disability

claims, the Department included intentionally similar language

requiring plans to provide any new evidence or rationales to claimants

"as soon as possible." 29 C.F.R. § 2560.503-1(h)(4)(i); 81 Fed. Reg. 92325

(Dec. 19, 2016) ("The text in paragraph (h)(4)(i) was intended to parallel text in the regulation for group health plans under the ACA."). This requirement is an example of a "direct import[ ]" from the ACA regulations in the 2016 amendments. 80 Fed. Reg. 72017 (2015). Thus, plan administrators issuing denials of disability and group health claims are under materially similar obligations to provide claimants with any new evidence or rationales relied upon or considered prior to litigation. Generally, this Court has explained that this requirement to provide information to the claimant is important because plan administrators who "have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary[,]" preclude the plan administrator and participant from "having full and meaningful dialogue regarding the denial of benefits." *Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (citing *Glista*, 378 F.3d at 129).

United argues that the district court should not have relied on *Glista* because *Glista* "concerned a denial of disability benefits, not medical benefits, to which different standards apply." United Br. at 41

27

(citing *Mary D.*). United's reliance on *Mary D.* here is again misplaced, as the standards regarding the right to review new information or evidence on appeal are now, and at the time of the *Mary D.* decision, the same for health claims and disability claims. While 29 U.S.C. § 1133 and the claims procedure regulation require that plans provide claimants with new or additional evidence, the ACA's full and fair review requirements for appeals of group health claims made this obligation absolutely clear. Therefore, under the terms of 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1), (2), United was required to provide A.K. (during the claims process) the relevant new or additional evidence or rationales that it relied on in denying her claim and that it later sought to use for summary judgment. A.K. did not need to request this new or additional evidence or rationale; rather, the ACA regulations require that covered group health plans must provide claimants with new or additional rationales before they can issue determinations based on such new or additional rationales. 29 C.F.R. § 2590.715-2719(b)(2)(ii)(C)(1), (2). The district court correctly accounted for these procedural violations in determining that United's decision was arbitrary and capricious.

28

United also argues that "upon review of a benefits denial under ERISA, courts may consider all of 'the evidence and arguments that appear in the administrative record.'" United Br. 41. United relies on *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008), for this proposition. The *Flinders* court, however, explained that federal courts will consider only "rationales that were specifically articulated in the administrative record *as the basis for denying a claim*." 491 F.3d at 1190 (emphasis added). This does not, as United suggests, open the door for administrators to provide evidence to the court that it failed to provide to participants during internal appeals. *Flinders* supports the district court's ruling to exclude the evidence, explaining that "we will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Id.* at 1191 (quotation marks and brackets omitted). A plan administrator may not "treat the administrative process as a trial run and offer a post hoc rationale in district court" because to do so deprives the claimant a fair opportunity

to rebut the evidence. *Id*. at 1192. Likewise, the district court here correctly found that United cannot introduce new evidence for the first time at a summary judgment hearing when Plaintiffs had no opportunity to address the evidence during internal appeals.

## II. District Courts May Account for Inconsistency in Denial Letters.

Shifting and inconsistent denial rationales in administrative appeals may factor into a district court's consideration of whether an insurer complied with its obligations for a "full and fair" review. *E.g., Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 368 (5th Cir. 2013) ("[I]t is impossible for the purpose of § 1133 to be fulfilled where the Plan denied Rossi a full and fair review by changing its basis for denial of benefits on administrative appeal."); *accord Killen v. Reliance Standard Life Ins. Co*., 776 F.3d 303, 311 (5th Cir. 2015) (identifying shifting rationales as a "bait-and-switch"); *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006).

Other circuits have also found that shifting reasons for a denial may make the denial arbitrary and capricious. In *Lauder v. First Unum Life Insurance Company*, 284 F.3d 375, 382 (2d Cir. 2002), the Second Circuit found that:

30

> this case raises the concern that plan administrators like
> First Unum will try the easiest and least expensive means of
> denying a claim while holding in reserve another, perhaps
> stronger, defense should the first one fail. In light of ERISA's
> remedial purpose of protecting plan beneficiaries, we are
> unwilling to endorse manipulative strategies that attempt to
> take advantage of beneficiaries in this manner.

In another case, the Sixth Circuit found that an administrator violated

ERISA when it "provided notice that implied one basis for its

termination of benefits, but then in its final decision letter included an

entirely new basis." *Wenner v. Sun Life Assur. Co. of Can.*, 482 F.3d

878, 882 (6th Cir. 2007). Finally, in *Salomaa v. Honda Long Term*

*Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011), the Ninth Circuit

found that a plan abused its discretion in denying a claim for benefits

because among other things, "the reasons for denial shifted as they

were refuted, were largely unsupported by the medical file, and only the

denial stayed constant." These circuit court decisions support the

premise that *each* decision by a plan administrator should comply with

fiduciary responsibilities as a final fiduciary decision (absent an

appeal). *See Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 113

(1989) (describing claims administration as an exercise of fiduciary or

trustee discretion).

31

Here, the district court reasoned that "one of the factors that a court must consider in [an] ERISA benefits decision is the consistency of the denial reason between administrators." *D.K.*, 2021 WL 2554109 at *12 (citing *Tracy O. v. Anthem Blue Cross Life & Health Ins.*, 807 F. App'x 845, 853–54 (10th Cir. 2020)). It found that United's denial letters were wholly inconsistent. *Id.* at *12-13. The court found that the first two denial letters determined that while A.K. appeared to require additional long-term residential care, long-term residential care was not a covered service under the plan. *Id.* at *13. However, "the first and second denial letters stand in direct opposition to the final three letters," which found that the medical necessity standard was not met. *Id.* Further, the district court found that United's final three denials provided different reasons for why medical necessity was not met. *Id.* The third and fourth reviewers asserted that medical necessity was not met because A.K.'s care "had become custodial," while the final external reviewer found that A.K. did not require residential care because "her conditions 'could have been managed at a therapeutic school with intensive outpatient behavioral supports.'" *Id.* The district court found that United's "shifting and inconsistent denial rationale [was] arbitrary

32

and capricious." *Id*. The district court's consideration of inconsistent denial letters is supported by circuit case law, as described above, clarifying that shifting rationales can indicate an arbitrary and capricious review of a claim.

United argues that "even if there were some inconsistency between different reviewers' analyses, that does not undermine UBH's denial of benefits where *all* of the medical necessity reviewers reviewed the record and agreed that continued residential care was not medically necessary under the Plan." United Br. at 24, 46. United concedes an error in the first two denial letters but attempts to wipe them away by urging the Court to consider its third attempt to adjudicate Plaintiffs' claim as the first, as if the first two denial letters were nonexistent. *Id*. at 47-49. United argues that the first two letters do not lend itself to a consideration of whether its denials were inconsistent because those reviewers did not assess medical necessity. *Id*. at 48. There is no legal basis for restricting the court's review to only those denials assessed under the same general theory. Circuit courts, as described earlier, considered inconsistencies throughout the entire review process in evaluation of whether review is arbitrary and capricious.

33

## <u>CONCLUSION</u>

For the foregoing reasons, the government supports affirmance of the district court's legal framework in assessing whether the denial was arbitrary and capricious, but it takes no position on the underlying merits of Plaintiffs' claims. The Secretary urges this Court to agree with the district court's ruling that United was obligated to address the opinions of A.K.'s treatment team and could not introduce new evidence or rationales in litigation that it failed to present to claimants during internal review. The Secretary urges this Court to agree that the district court acted properly in considering United's inconsistent denial letters to determine whether United's review was arbitrary and capricious.

Respectfully submitted,

Date:   February 23, 2022

SEEMA NANDA
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor for
Plan Benefits Security

THOMAS TSO
Counsel for Appellate
and Special Litigation

34

/s/ _____
SUSANNA BENSON
Senior Trial Attorney
Plan Benefits Security Division
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave. NW
Room N-4611
Washington, DC 20210
(202) 693-5600

RACHEL UEMOTO
Trial Attorney

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Fed. R. App. P. 27(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 6,500 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2016, in Century Schoolbook 14-point font.

Date:  February 23, 2022          */s/ Susanna Benson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2022, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: __February 23, 2022__    _/s/ Susanna Benson_