## ORAL ARGUMENT REQUESTED

## No. 21-04088

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

DAVID K., KATHLEEN K., AND AMY K.,
*Plaintiffs-Appellees,*

v.

UNITED BEHAVIORAL HEALTH AND ALCATEL-LUCENT MEDICAL
EXPENSE PLAN FOR ACTIVE MANAGEMENT EMPLOYEES,
*Defendants-Appellants,*

---

On Appeal from the U.S. District Court for the District of
Utah (No. 2:17-cv-01328)
The Honorable Dale A. Kimball

---

## REPLY BRIEF OF APPELLANTS

---

Jennifer S. Romano
CROWELL & MORING LLP
515 South Flower Street
40th Floor
Los Angeles, CA  90071
Phone: (213) 622-4750
jromano@crowell.com

Amanda Shafer Berman
Amy M. Pauli
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
Fax: (202) 628-5116
aberman@crowell.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ........................................................................................vii

INTRODUCTION ................................................................................ 1

ARGUMENT ....................................................................................... 4

I.   The Court Should Reach the Merits of the Appeal. ...................... 4

    A.   The Court has all the documents it needs to decide the merits, and so should decline to summarily affirm. .................................................................. 4

    B.   UBH did not waive any arguments. ..................................... 6

II.  UBH's Decision Was Well Reasoned and Supported. .................. 10

    A.   Substantial evidence supports the conclusion that residential treatment was not medically necessary. .............................................................. 10

    B.   The reviewers' denial letters fulfilled ERISA's requirements. .................................................................. 18

        1.   The reviewers explained why they denied coverage as not medically necessary. .......................... 18

        2.   The reviewers were not required to explain why they disagreed with A.K.'s providers. ............... 20

        3.   The Court may consider the reviewers' notes in the administrative record to rebut Claimants' arguments. ............................................. 27

    C.   The reviewers' rationales were not inconsistent. ............... 31

III. If the Court Finds That UBH's Decision Was Not Supported, Remand is the Appropriate Remedy. ........................ 36

CONCLUSION ...................................................................... 38

ORAL ARGUMENT STATEMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amy G. v. United Healthcare*,
  No. 2:17–CV–00427–BSJ, 2018 WL 2303156
  (D. Utah May 21, 2018) ................................................................. 13, 23

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003) ...................................................................... 24, 25

*Burnett v. Sw. Bell Tel., L.P.*,
  555 F.3d 906 (10th Cir. 2009) ............................................................. 5

*Christensen v. Harris County*,
  529 U.S. 576 (2000) ...................................................................... 21, 22

*Cooper v. Hewlett-Packard Co.*,
  592 F.3d 645 (5th Cir. 2009) ............................................................ 33

*DeGrado v. Jefferson Pilot Fin. Ins. Co.*,
  451 F.3d 1161 (10th Cir. 2006) ......................................................... 36

*EEOC v. C.R. England, Inc.*,
  644 F.3d 1028 (10th Cir. 2011) ........................................................... 8

*Egert v. Connecticut General Life Insurance Co.*,
  900 F.2d 1032 (7th Cir. 1990) ........................................................... 14

*Gaither v. Aetna Life Insurance Co.*,
  394 F.3d 792 (10th Cir. 2004) ........................................................... 26

*Glista v. Unum Life Insurance Co. of America*,
  378 F.3d 113 (1st Cir. 2004) ............................................................. 28

*Goodall v. Gates Corp.*,
  39 F.3d 1191 (10th Cir. 1994) ............................................................. 6

*Harvey Barnett, Inc. v. Shidler*,
    338 F.3d 1125 (10th Cir. 2003) ........................................................ 6

*Juliano v. Health Maint. Org. of N.J., Inc.*,
    221 F.3d 279 (2d Cir. 2000) .......................................................... 34

*Keiser v. CDC Inv. Mgmt. Corp.*,
    No. 99-cv-12101(WHP), 2003 WL 1733729
    (S.D.N.Y. Mar. 25, 2003) ........................................................... 34

*Killen v. Reliance Standard Life Ins. Co.*,
    776 F.3d 303 (5th Cir. 2015) ....................................................... 33

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ........................................................ 21, 23

*Lauder v. First Unum Life Ins. Co.*,
    284 F.3d 375 (2d Cir. 2002) ............................................. 10, 32, 34

*Mark M. v. United Behavioral Health*,
    No. 2:18-CV-00018, 2020 WL 5259345
    (D. Utah Sept. 3, 2020) ............................................................ 23

*Mary D. v. Anthem Blue Cross Blue Shield*,
    778 F. App'x 580 (10th Cir. 2019) ................................................ 26

*McGraw v. Prudential Ins. Co. of Am.*,
    137 F.3d 1253 (10th Cir. 1998) .................................................... 15

*Montano v. Allstate Indem.*,
    211 F.3d 1278 (10th Cir. 2000) ..................................................... 6

*Nixon v. City & Cnty. of Denver*,
    784 F.3d 1364 (10th Cir. 2015) ..................................................... 9

*Raymond M. v. Beacon Health Options, Inc.*,
    463 F. Supp. 3d 1250 (D. Utah 2020) ............................................. 36

*Reedy v. Werholtz*,
    660 F.3d 1270 (10th Cir. 2011) ..................................................... 8

*Robinson v. Aetna Life Ins. Co.*,
    443 F.3d 389 (5th Cir. 2006)..........................................................33, 35

*Rossi v. Precision Drilling Oilfield Servs. Corp. Emp.*
    *Benefits Plan*,
    704 F.3d 362 (5th Cir. 2013)..........................................................28, 34

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term*
    *Disability Income Plan*,
    85 F.3d 455 (9th Cir. 1996)............................................................15, 20

*Sanchez v. Beaver County Sheriff*,
    856 F. App'x 777 (10th Cir. 2021) ........................................................8

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
    841 F.3d 827 (10th Cir. 2016) ..............................................................6

*Tracy O. v. Anthem Blue Cross Life & Health Insurance Co.*,
    No. 2:16-cv-422-DB, 2017 WL 3437672
    (D. Utah Aug. 10, 2017)......................................................................27

*Travelers Indem. Co. v. Accurate Autobody, Inc.*,
    340 F.3d 1118 (10th Cir. 2003) ............................................................5

*United States v. Kunzman*,
    54 F.3d 1522 (10th Cir. 1995)...............................................................8

*Weber v. GE Grp. Life Assurance Co.*,
    541 F.3d 1002 (10th Cir. 2008)...........................................................37

*Weiss v. Banner Health*,
    416 F. Supp. 3d 1178 (D. Colo. 2019), *aff'd*,
    846 F. App'x 636 (10th Cir. 2021) ......................................................14

*Wenner v. Sun Life Assurance Co. of Can.*,
    482 F.3d 878 (6th Cir. 2007)...............................................................35

*Wit v. United Behavioral Health*,
    No. 20-17363, 2022 WL 850647 (9th Cir. Mar. 22, 2022) .................14

*Woolsey v. Marion Lab'ys, Inc.*,
   934 F.2d 1452 (10th Cir. 1991) ........................................................... 17

*Wopsock v. Nordwall*,
   No. 04–4296, 180 F. App'x 6 (10th Cir. 2006) ...................................... 5

*Yates v. United States*,
   574 U.S. 528 (2015) ............................................................................ 23

## Statutes

Affordable Care Act ................................................................................ 22

ERISA, 29 U.S.C. § 1133 ................................................................. *passim*

## Other Authorities

29 C.F.R. § 2560.503-1(g)(1)(v)(B) ................................................... 18, 21

29 C.F.R. § 2560.503-1(g)(1)(vii)(A)–(B) .............................................. 21

29 C.F.R. § 2560.503-1(h)(2)(iii) ........................................................... 29

29 C.F.R. § 2650.503-1(g)(1) ................................................................. 19

29 C.F.R. § 2650.503-1(g)(1)(v)(B) ....................................................... 19

81 Fed. Reg. 92,316 (Dec. 19, 2016) ............................................22-24, 26

Fed. R. App. P. 10(e) ................................................................................ 5

Fed. R. App. P. 30(a)(2) ........................................................................... 4

Local Rule 27.5(A)(3) ............................................................................... 5

Local Rules 30.2(A)(1) and 10.4(C)(9) .................................................... 4

# GLOSSARY

| | |
|---|---|
| ACA | Affordable Care Act |
| APA | American Psychiatric Association |
| DOL | The Department of Labor |
| ERISA | Employee Retirement Income Security Act of 1974 |
| UBH | United Behavioral Health |

## INTRODUCTION

Appellees D.K. and A.K. ("Claimants") spend much of their brief ("Cl. Br.") arguing that the Court should decline to reach the merits of this case. There is no reason for it to do so. Claimants argue that UBH's Appendix omitted certain documents, but UBH filed a supplemental appendix, and Claimants admit the Court has all the documents needed to decide this case. Claimants also argue that UBH waived each issue raised in its opening brief. UBH did no such thing. UBH's brief explained why, on *de novo* review on appeal, this Court should uphold UBH's denial of benefits, and also why the district court's contrary decision was wrong, addressing each of the four main reasons the district court gave for overturning the denial of benefits. Under this Circuit's law on waiver, there is no question that is enough to preserve UBH's challenge in full.

On the merits, Claimants have no response to the ample record evidence supporting the multiple physician reviewers' unanimous conclusion that, after three months of residential treatment, such care was no longer medically necessary. Even the district court agreed that "the evidence could reasonably be interpreted to show that A.K. could have been discharged to a lower level of care[.]" App. Vol. 1 at 56.

1

To avoid the conclusion that observation demands—that the denial of benefits was *not* arbitrary and capricious—Claimants ask this Court to rewrite ERISA's regulations and impose a heavier burden on UBH and the Plan. In Claimants' view, health benefits plans must not only provide their reasons for denying benefits in their decision letters, but discuss why they disagree with contrary provider opinions. The Department of Labor ("DOL") joined Claimants in pressing this new requirement in its amicus brief ("DOL Br."). Claimants and DOL are wrong. Unlike DOL's 2016 disability regulations, the ERISA health benefits regulations require only that administrators identify the basis for their decision with reference to the relevant plan terms and, if the basis is medical necessity, explain why the care was not medically necessary. UBH did exactly that. This Court should apply the health benefits regulations as they are, not as Claimants and DOL would like them to be.

Claimants (and DOL) also argue that this Court may not consider the UBH's reviewers' internal claim file notes for any purpose, even though those notes are undeniably part of the administrative record. Again, their argument is unmoored from the health benefits regulations, and contrary to this Circuit's past reliance on reviewer notes to *rebut*

arguments raised by Claimants that UBH did not consider particular aspects of the record. That is all that UBH asks this Court to do here. In the decision letters, UBH's physician reviewers identified the Plan requirement upon which they based their denial decisions—medical necessity—and gave multiple reasons why continued residential care (*after* the initial three months approved) was not medically necessary. The reviewers' internal notes demonstrate that, in reaching their decision, they looked at the whole medical record, including A.K.'s pre-admission assessments. This Court may consider those notes when assessing Claimants' contrary argument. In any event, the decision letters contain sufficient reasoning to support the denial decision.

Finally, Claimants insist that, if the Court upholds the decision below, it should also uphold the award of benefits, regardless of why it believes UBH's denial decision was deficient. That is again inconsistent with the law of this Circuit, which directs a remand in all but the most extraordinary cases, where benefits are plainly due. This is not an extraordinary case. The Court should therefore reverse the award of benefits, as well as the grant of attorneys' fees, even if it finds the denial of benefits arbitrary and capricious.

## ARGUMENT

### I.    The Court Should Reach the Merits of the Appeal.

#### A.    The Court has all the documents it needs to decide the merits, and so should decline to summarily affirm.

Claimants seek to avoid review on the merits, asking the Court to summarily affirm because UBH did not include the entire record and briefing below in their Appendix. Cl. Br. 31–35. Claimants raised this issue for the first time in their brief, and UBH immediately sought clarification from the clerk's office, and then leave to file a corrected or supplemental appendix. Dkt. 10894548 (filed Feb. 22, 2022).[1] The Court referred that motion to the merits panel, but instructed UBH to file a supplemental appendix containing the only part of the record not included by either party in their prior appendices. Dkt. 10896206. UBH did so. Dkt. 10898497. Claimants concede that the Court has "all the materials it needs to decide the case." Dkt. 10895645 at 5, 9.

---

[1] As explained, UBH believed, based on Local Rules 30.2(A)(1) and 10.4(C)(9) (instructing appellants to include the whole record only in social security cases), that it should only include the parts of the record necessary for the Court to decide the appeal. Appellants did not include the summary judgment briefing based on Fed. R. App. P. 30(a)(2), which bars the inclusion of briefing in appendices, and their belief that the record below was already available to the Court (see Dkt. 10861310).

Claimants nevertheless argue that the Court should summarily affirm the decision below without reaching the merits. To do so would be inconsistent with Local Rule 27.5(A)(3), which allows UBH to "supplement or correct records." *See also* Fed. R. App. P. 10(e) (permitting correction where parties omit materials "by error or accident"). In contrast, where this Court has declined to reach the merits due to deficiencies in the appendix, it was because the issue was not timely remedied, and so the Court did not have the information needed to decide the appeal. *E.g.*, *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906 (10th Cir. 2009) (No. 07-3126) (docket shows no indication of any attempt to correct or supplement); *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1119 (10th Cir. 2003) (neither party provided the insurance policy at the heart of the dispute, or sought leave to file a supplemental appendix until after the opinion issued). And in *Wopsock v. Nordwall*, No. 04–4296, 180 F. App'x 6, 8–9 (10th Cir. 2006), the Court gave the appellant the opportunity to correct the deficiency, but the appellant still failed to provide the documents needed to decide the case. These few cases stand in stark contrast to the circumstances here, where Appellants

timely moved for leave to correct or supplement the appendix, and the Court now has all relevant material.

Refusing to reach the merits because of the claimed deficiencies in the original Appendix also is unwarranted given that Claimants could have raised their concerns shortly after it was filed, and thereby given UBH the opportunity to supplement or correct prior to Claimants' brief. Claimants deliberately chose not to do so, apparently hoping to win this appeal through a procedural technicality. This Court routinely declines to summarily affirm based on appendix deficiencies, preferring to resolve appeals on their merits. *See, e.g.*, *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 832 n.3 (10th Cir. 2016) (declining to summarily affirm due to deficiencies in appendix); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 n.19 (10th Cir. 2003) (considering merits despite appendix deficiencies); *Montano v. Allstate Indem.*, 211 F.3d 1278 (10th Cir. 2000) (table); *Goodall v. Gates Corp.*, 39 F.3d 1191 (10th Cir. 1994) (table).

The Court should do so here.

## B.    UBH did not waive any arguments.

In a second attempt to avoid the merits, Claimants assert that UBH waived every issue raised in its brief—and the entire appeal. *See* Cl. Br.

47–48, 51, & 57. This argument is baseless. UBH not only challenged the district court's holding that the Plan's denial of benefits was arbitrary and capricious, but explained why the district court's factual conclusions were inconsistent with the record and its legal analysis wrong. *See* App. Br. 28–50. UBH thereby preserved its appeal in full.

Claimants admit that UBH challenged the four main bases for the district court's conclusion that the denial of benefits was arbitrary and capricious.[2] Specifically, UBH challenged the district court's conclusions that (1) the record did not support the reviewers' decision (addressed at App. Br. 30–37, 42–43); (2); UBH did not meet ERISA's requirements because it failed to engage with A.K.'s providers' opinions and pre-Discovery medical history (*id.* at 37–41); (3) A.K.'s care was not "custodial care" under the Plan (*id.* at 43–46); and (4) the reviewers' denial decisions were inconsistent (*id.* at 47–50). Claimants nonetheless argue that UBH waived all of these issues because it did not address every line of the district court's analysis. *E.g.*, *id.* at 47–48. The cases Claimants cite do not support that novel application of the waiver doctrine.

---

[2] *See* Cl. Br. 36 ("Defendants contend that the district court erroneously ruled that Defendants arbitrarily and capriciously denied A.K. benefits. They raise four complaints to the district court's ruling.").

In *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995), this Court declined to address issues "raised in the Appellant's Brief without supporting argument[.]" That is not what UBH did. UBH's brief included over twenty pages of argument explaining why the decision below is contrary to substantial record evidence and should be overturned. *Sanchez v. Beaver County Sheriff*, 856 F. App'x 777, 779 (10th Cir. 2021), is also unhelpful to Claimants. There, the appellant purported to challenge the district court's decision dismissing a Section 1983 claim as an abuse of its discretion but did "not even attempt[ ] to make an abuse-of-discretion argument. Instead, his brief merely restates the various allegations of his underlying [ ] claims[.]" *Id*. Because the appellant "failed to present any argument or authority," this Court "decline[d] to further consider it on appeal." *Id*.[3] Again, the circumstances could not be more different. Here, UBH explained "why the district

---

[3] Similarly, in *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011), appellants sought to pursue a due process claim, but their brief failed to address whether they had in fact been denied due process. *Id*. And the language Claimants quote from *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1050 n.18 (10th Cir. 2011) (noting the appellant "failed to present any argument or authority in support of this particular … claim") only confirms the high standard for finding waiver.

court's decision was wrong." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). Nothing in this Circuit's case law requires an appellant to do a line-by-line exegesis of the district court's decision, which would make little sense where this Court's review is *de novo*.

Claimants further argue that UBH does not contest the district court's conclusion that A.K.'s care was not "custodial," and thereby "waived their right to challenge to [*sic*] the district court's medical necessity ruling." Cl. Br. 39–40. This argument is based on the false premise that the district court's determination that A.K.'s care did not qualify as "Custodial Care" under the Plan is an independent basis for affirming the decision below. *See id*. It is not. As UBH explained, the reviewers' unanimous conclusion that care was not medically necessary is *an independent basis* for denying benefits and so *an independent ground* for upholding the Plan's denial decision. App. Br. 43–46. UBH thoroughly explained in its opening brief why the district court was wrong not to uphold the denial of benefits for lack of medical necessity and thus preserved all aspects of its challenge to the decision below.

## II.    UBH's Decision Was Well Reasoned and Supported.

### A.    Substantial evidence supports the conclusion that residential treatment was not medically necessary.

Claimants do not contest that, after UBH's initial denial of coverage, three different physician reviewers (one external) found that, after three months of treatment, 24-hour residential care was no longer medically necessary. App. Vol. 2 at 57–59, 87–89, 134–44. [4] Nor do Claimants contest that the district court concluded that the "reviewers did not abuse their discretion because the evidence could reasonably be interpreted to show that A.K. could have been discharged to a lower level of care[.]" App. Vol. 1 at 56; *see* Cl. Br. at 41. That finding alone should have resulted in the district court affirming the administrator's denial of benefits. Even so, each of Claimants' reasons for overturning the Plan's decision, despite substantial supporting record evidence, fails.

<u>First</u>, Claimants incorrectly argue that the district court's finding that A.K.'s care at Discovery was not "Custodial Care" precludes this Court from reversing based on the reviewers' unanimous determination that A.K.'s care was not medically necessary. Cl. Br. 39–40. Under the

---

[4] Citations to "App. Vol. X" refer to Appellants' initial Appendix. Claimants' Supplemental Appendix is cited as "Supp. App."

Plan, benefits can be denied *either* because the services provided were not "Medically Necessary" *or* because they qualify as "Custodial Care." They are two separately defined terms, each of which provides an independent basis for denying coverage. *Compare* App. Vol. 2 at 7 (defining "Medically Necessary"), 14 (excluding from coverage services that are not medically necessary) *with* 6 (defining "Custodial Care" as certain services "prescribed by a medical professional"), 14 (excluding from coverage services that constitute "Custodial Care"). Thus, even if the district court were right that A.K.'s care at Discovery did not qualify as "Custodial Care," as defined in the Plan, the denial of benefits can still be upheld if the care was not "Medically Necessary." That is precisely the case here.

Claimants argue that two UBH reviewers, Dr. Baker and Dr. Manning, denied benefits because A.K.'s care had become "custodial," but not for lack of medical necessity. Cl. Br. 40–41. That is incorrect. Both Dr. Baker and Dr. Manning wrote, as a reason for affirming the denial of coverage, that "medical necessity was not met." App. Vol. 2 at 88, 57. A third, external medical reviewer reached the same conclusion. App. Vol. 2 at 143. Thus, the relevant question is not whether the district court was correct when it concluded that the care provided to A.K. was not

"custodial," but whether the record contains substantial evidence supporting the reviewers' unanimous conclusion that, after three months, residential treatment was not medically necessary. As the district court admitted, it does.

Second, Claimants argue that this Court should disregard the district court's conclusion that the reviewers' "why now" factor analysis was not arbitrary and capricious because the Plan's terms control, and the Plan covers mental health conditions, not just pressing symptoms. Cl. Br. at 40–41. This argument misses the mark.

The Plan does not cover services that are not "Medically Necessary"—whether for the member's conditions or symptoms. App. Vol. 2 at 2. Under the Plan's definition, a Residential Treatment Center's "patient program is oriented toward discharge of the patient to Outpatient care." App. Vol. 2 at 10. If the condition can be safely, effectively, or more appropriately treated at a lower level of care, or if the care received is inconsistent with the standards generally accepted by the health care profession, the services are not "Medically Necessary." App. Vol. 2 at 7.

The UBH reviewers based their medical necessity determination on both grounds. The district court noted *and agreed with* the reviewers' conclusion that, after three months, A.K. could have been treated in a less intensive setting. App. Vol. 1 at 56. Each of the reviewers also stated that the care provided at Discovery was not consistent with accepted standards. *See* App. Vol. 2. at 88 (Dr. Baker stated that "medical necessity was not met" because there was no evidence of active treatment); 57–58 (finding by Dr. Manning that A.K. was not in "active treatment").[5] Contrary to Claimants' assertions, Ms. Dunning (who incorrectly determined coverage was excluded based on an earlier version of the Plan) and Dr. Kho (the first UBH physician reviewer) did not conclude differently. Rather, they agreed that the services at Discovery were "not consistent with generally accepted standards of medical practice," "[n]ot clinically appropriate," and "[n]ot … backed by credible research[.]" App. Vol. 2 at 63, 86. A court in this Circuit previously upheld the denial of benefits for residential treatment at the same facility (Discovery) based on the reviewers' unanimous agreement that the care

---

[5] IPRO similarly explained that that under "APA Practice Guidelines … the least restrictive level of care for safe and effective treatment is appropriate" and "one year is not the standard." App. Vol. 2. at 46.

provided was not medically necessary. *Amy G. v. United Healthcare*, No. 2:17–CV–00427–BSJ, 2018 WL 2303156, at \*5 (D. Utah May 21, 2018). The same conclusion should have been reached here.

Claimants fault UBH for relying on its Guidelines in addition to the Plan's terms to interpret the Plan's definition of "Medically Necessary." But "an administrator may establish and rely on procedures or guidelines so long as they reasonably interpret the plan." *Weiss v. Banner Health*, 416 F. Supp. 3d 1178, 1186 (D. Colo. 2019) (affirming reliance on guidelines to interpret Plan's definition of "medically necessary"), *aff'd*, 846 F. App'x 636 (10th Cir. 2021) (same). And in *Wit v. United Behavioral Health*, No. 20-17363, 2022 WL 850647, at \*2 (9th Cir. Mar. 22, 2022), the Ninth Circuit held that UBH did not abuse its discretion in using its Guidelines to interpret its plans and administer benefits.

To argue otherwise, Claimants rely on *Egert v. Connecticut General Life Insurance Co.*, 900 F.2d 1032, 1038 (7th Cir. 1990). But there, the court found that the administrator unreasonably interpreted the plan to deny coverage for infertility where the plan covered treatment for "illnesses," and the implementing guidelines described infertility as an illness. In other words, the decision was arbitrary and capricious *because*

*it conflicted with interpretative guidelines.* Claimants' two most on-point cases are distinguishable because the administrator placed additional conditions on plan-defined terms that did not exist in the plan.[6] That's not what happened here. Both the Plan and the Guidelines require that residential treatment be needed to address pressing conditions, and that the patient be transitioned to a lower level of care once those conditions have been ameliorated. *Compare* App. Vol. 2 at 26 *with id.* at 7, 10.

As the Plan directs, UBH, working with medical professionals, developed standards for patients entering and remaining in residential treatment and memorialized them in the Guidelines. Those standards included the "why now" factors.[7] Like the Plan's terms, the "why now"

---

[6] *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459 (9th Cir. 1996) (interpreting plan definition of "total disability" so that a participant would not be totally disabled if work was available with accommodations); *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1260 (10th Cir. 1998) (finding administrator impermissibly modified plan "definition of 'medically necessary' with the additional requirement the treatment provide a measurable and substantial increase in functional ability").

[7] On appeal, Claimants suggest for the first time that considering the "why now" factors was inappropriate because a California court held that UBH's use of the Guidelines violated plan terms. Cl. Br. 43 n.4 (citing *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 U.S. Dist. LEXIS 35205, at *84 (N.D. Cal. Mar. 5, 2019)). But as noted above, the Ninth Circuit reversed that decision. In any event, UBH's Guidelines (Continued…)

factors ask whether the circumstances leading to admission "cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting[.]" *Compare* App. Vol. 2 at 27 *with id.* at 7. Here, the reviewers determined that, after three months of progress, A.K. could have been safely treated in a less intensive setting.

<u>Third</u>, Claimants argue that, even if the "why now" factors applied, UBH still reached the wrong decision because A.K.'s medical providers (including those who assessed her *before* she entered residential care) believed she would relapse if discharged. Cl. Br. at 43–46. But UBH's physician reviewers examined the medical record and concluded otherwise based on record evidence that, after three months, A.K. had made progress and was ready for a step down in care. *See, e.g.,* App. Vol. 2 at 88 ("The treatment record indicates no evidence of ongoing self-injurious behavior in the three months prior to the adverse determination . . . thus providing objective evidence of significantly improved ability to control self-injurious behavior."). The external reviewer also found that A.K. "had improved" and her records "do not

_____

were in place when the reviewers made their decision, and Claimants did not argue below that reliance on them was unlawful.

16

indicate" that A.K. "continued to meet criteria for [residential] care." App. Vol. 2 at 143. Even the district court agreed that "the evidence can support a finding that during her first 90 days at Discovery [ ] A.K. had improved in important ways." App. Vol. 1 at 56.

Coupled with a lack of evidence of active treatment and descriptions of A.K.'s illnesses as in "remission", it is unsurprising UBH's reviewers found A.K. could step down to a lower level of care. App. Vol. 2 at 57, 88. This Court should not second guess their analysis. *Woolsey v. Marion Lab'ys, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991) (declining to "substitute [the court's] judgment for the judgment of the [plan]" where the decision had a reasonable basis). A.K.'s *pre*-Discovery records and provider opinions cannot dictate that she must remain in residential care indefinitely, or require UBH's reviewers to ignore record evidence that— after three months—A.K. had stabilized and could transition back home. As the district court observed, "at some point during long-term residential treatment, a patient must be discharged to a lower level of care to see if the treatment helped[.]" App. Vol. 1 at 56.

Thus, substantial evidence supports the physician reviewers' conclusion that, after three months, A.K. was ready to transition out of

residential care—as the district court admitted. App. Vol. 1 at 56. This Court should sustain UBH's decision on that basis.

## B. The reviewers' denial letters fulfilled ERISA's requirements.

Claimants argue that UBH's denial of benefits for ongoing residential care did not fulfill ERISA's requirements. Not so. The health benefits regulations require that a plan administrator identify the "reasons for the adverse determination;" "the specific plan provisions on which the determination is based;" and, where benefits are denied for lack of medical necessity, "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances[.]" 29 C.F.R. § 2560.503-1(g)(1)(v)(B). UBH fulfilled those core requirements, and this Court should reject Claimants' and DOL's attempts to impose additional requirements.

### 1. The reviewers explained why they denied coverage as not medically necessary.

UBH's reviewers explained in their denial letters why they all determined that A.K's continued residential services at Discovery were no longer medically necessary, pointing to record evidence. For example, Dr. Baker listed several reasons in his denial letter: there was no evidence of "active treatment" because A.K. only saw a doctor once a

month, rather than weekly; A.K. exhibited "little evidence" of mental illness upon admission, her diagnoses were in "remission" and "partial remission," and those diagnoses did not change during her treatment; and A.K. had "consolidate[d] her gains" in treatment and had not exhibited self-injurious behavior, thus addressing the "why now" factors driving admission. App. Vol. 2 at 88. While this multi-pronged explanation of why residential treatment was no longer medically necessary is not overly technical—as appropriate for a decision letter to non-medical experts, and as required under ERISA[8]—it is a reasoned explanation of the decision. That is all that is required. *See* 29 C.F.R. § 2650.503-1(g)(1)(v)(B) (plan must provide "an explanation of the scientific or clinical judgment for the determination").

Dr. Manning concurred with Dr. Baker in nearly every respect, and his decision similarly gave the reasons for his conclusion that additional residential treatment was not medically necessary. *See* App. Vol. 2 at 57–58 (commenting that A.K. was not in "active treatment" because she only

---

[8] 29 U.S.C. § 1133 (requiring benefits denial to be "written in a manner calculated to be understood by the participant"); 29 C.F.R. § 2650.503-1(g)(1) (requiring the benefit determination to be "set forth, in a manner calculated to be understood by the claimant").

saw the doctor once a month, A.K. had little evidence of illness upon admission or her illnesses were in "remission" or "partial remission," and A.K. exhibited no "self-injurious behavior," thus addressing the goals of admission). The external reviewer agreed, and also gave multiple reasons for finding continued residential care not medically necessary. App. Vol. 2 at 143 (denying for lack of medical necessity because A.K.'s records showed "[s]he had improved," "could have been treated in a therapeutic school", and there was no evidence "remainder in a residential setting" was the "safest and most effective level of care"). The reviewers' explanations for their medical necessity finding, each giving multiple reasons based on the medical record, are more than sufficient to sustain UBH's denial of benefits.

### 2. The reviewers were not required to explain why they disagreed with A.K.'s providers.

Claimants insist that the reviewers failed to provide sufficient reasoning for their decisions because they did not explain, *in their denial letters*, why they disagreed with A.K.'s treatment providers. DOL takes this argument further, insisting that the ERISA health benefits regulations impose this requirement on all claims administrators even

though they contain no such language, and despite the fact that the *disability* benefits regulations explicitly impose that requirement.

Claimants' and DOL's arguments are contrary to plain regulatory text. The health benefits regulations state that, when denying benefits for lack of medical necessity, the administrator must provide "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances." 29 C.F.R. § 2560.503-1(g)(1)(v)(B). The disability regulations also so require, but *additionally* instruct the administrator to provide "[a] discussion of the decision, including an explanation of the basis for disagreeing with or not following . . . [t]he views . . . of health care professionals treating the claimant[.]" 29 C.F.R. § 2560.503-1(g)(1)(vii)(A)–(B). The DOL's interpretation ignores this clear textual difference and is therefore not entitled to deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (explaining that the text of a regulation "means what it means," and courts should not defer to agency interpretation absent genuine ambiguity). This is the same reason that the Supreme Court declined to defer to a DOL opinion letter in *Christensen v. Harris County*, 529 U.S. 576, 588 (2000), explaining that

the DOL's interpretation of its unambiguous regulation would have, in essence, allowed the agency "to create *de facto* a new regulation." *Id*. That is precisely what DOL is trying to do here through its amicus brief.

DOL asserts that "while subsection (g) separates regulations for disability and group health claims, many relevant provisions . . . apply to '[e]very employee benefit plan[.]'" DOL Br. 18. But that undercuts, not aids, DOL's argument. The ERISA regulations explicitly identify where the disability and health claims requirements diverge. The fact that some requirements apply across the board only highlights that the differences were deliberate and meaningful. Indeed, when promulgating the current version of the disability regulations in 2016, DOL explained that it had "carefully selected among the [Affordable Care Act] amendments to the claims procedures for group health plans" and made "several adjustments . . . to account for the different features and characteristics of disability benefit claims." 81 Fed. Reg. 92,316, 92,318 (Dec. 19, 2016).

DOL's own statements in the preamble to the 2016 rule also contradict its claim that 2016 rulemaking only "made explicit" something that was already required. DOL explained that, while the prior regulation required only "a reasoned explanation" for a disability

decision, it was "revis[ing]" the regulations "to require that adverse benefit determinations on disability benefit claims contain a discussion of the basis for disagreeing with the views of health care professionals who treated the claimant . . . ." 81 Fed. Reg. at 92,320–21. DOL's discussion of the comments for and against this addition, and concerning the scope of the requirement, further undercut DOL's argument that it was merely codifying existing requirements. *Id.* at 92,321–22.

DOL's new interpretation of the health benefits regulations to implicitly contain the requirement added to the disability regulations in 2016 also runs contrary to the rule against surplusage,[9] rendering the text added in 2016 unnecessary and inoperative. And it is at odds with the longtime, consistent practice of plan administrators,[10] which is yet another reason to decline to defer. *See Kisor,* 139 S. Ct. at 2417–18.

---

[9] *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality op.) (declining to read statutory text to "render superfluous an entire provision").

[10] This is demonstrated by case law in this Circuit upholding decisions containing no discussion of the claimants' providers. *E.g.*, *Mark M. v. United Behavioral Health*, No. 2:18-CV-00018, 2020 WL 5259345, at *3–*6, *12 (D. Utah Sept. 3, 2020); *Amy G.*, 2018 WL 2303156, at *2–*3.

There is good reason for that consistent past practice. Health benefits claims are meaningfully different than disability benefits claims. As commenters explained in the 2016 disability benefits rulemaking process, unlike disability benefits decisions, health benefits decisions often must be made quickly to address immediate and changing care needs. *See* 81 Fed. Reg. at 92318 ("medical claims typically involve only a limited treatment over a relatively short period of time" and address "an isolated issue," whereas "disability claims require a series of determinations over a period of several years," and "involve a more complex, multi-layered analysis"). The Supreme Court recognized these differences in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832–33 (2003), noting that there are "critical differences between the Social Security disability program and ERISA benefit plans [that] caution against importing a [ ] rule from the former area into the latter." That is exactly what DOL now seeks to do—without going through rulemaking. If DOL wishes to require health benefits plans to discuss provider opinions in their denial decisions, then it should undertake rulemaking so that stakeholders can debate whether it makes sense to impose that requirement in this context.

In addition to being inconsistent with the current regulatory text, DOL's position that ERISA already requires health benefits plan to discuss provider opinions is also contrary to the Supreme Court's observation in *Black & Decker* that "[n]othing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." 538 U.S. at 831. There, the Court rejected the argument that, under ERISA, a disability benefits claim administrator who "rejects the opinions of a claimant's . . . physician [must] come forward with specific reasons for his decision" to do so. *Id.* at 828 (internal quotation omitted). That is what DOL now seeks to require of health benefits administrators: that they explain why they rejected contrary opinions from claimants' treating physicians. The Supreme Court explained, however, that "[i]f the Secretary of Labor found it meet to adopt a treating physician rule by regulation, courts would examine that determination with appropriate deference." *Id.* at 831. Thirteen years later, the Secretary promulgated the 2016 disability benefits regulations, requiring disability plan administrators to discuss claimants' providers opinions. But the

25

Secretary has not yet "chosen that course" for health benefits plans. *Id.*
Unless and until DOL conducts a rulemaking to impose the same
requirement on health benefits plans, the difference between the text of
the disability and health benefits regulations must be given effect.

DOL's position also is contrary to this Circuit's resolution of the
same question in *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x
580, 589 n.7 (10th Cir. 2019). There, the Court rejected the very
argument now advanced by DOL and Claimants, opining that, for non-
disability determinations, administrators do *not* have to identify their
"basis for disagreeing with" the claimant's providers. *Id.* The Court's
conclusion was based on the textual difference between the ERISA
benefits regulations and disability regulations. *See id.*[11] While *Mary D.* is
unpublished, the Court's conclusion follows the regulatory text, giving

---

[11] DOL critiques *Mary D.* for ignoring that when, in *Gaither v. Aetna Life
Insurance Co.*, 394 F.3d 792, 807 (10th Cir. 2004), this Court reversed a
denial of long-term disability benefits and criticized the claim
administrator for "shut[ting] [its] eyes to readily available information,"
the same regulatory language applied to disability and health benefits
claims. DOL Br. 19. But whatever relevance *Gaither* may have had to
health benefits claims in 2004, it cannot logically be applied to impose
the same requirements on disability and health benefits decisions after
*both* sets of regulations have been amended *in different ways* (*see* 81 Fed.
Reg. at 92316–17, discussing prior amendment of health benefits claim
requirements through ACA and 2015 implementing regulations).

meaning to DOL's choice to enact language requiring a discussion of provider opinions in the disability context, but not in the health benefits context. This Court should not now reverse course and allow DOL to use pending litigation to bypass the regulatory process, in which insurers, benefits organizations, and others could provide their views on whether such a requirement should be imposed for health benefits claims.

>   **3.    The Court may consider the reviewers' notes in the administrative record to rebut Claimants' arguments.**

Claimants and DOL further argue that, in determining whether UBH's denial decision was arbitrary and capricious, the Court should not consider UBH's reviewers' internal notes because that material was not included in the denial letters to Claimants. Cl. Br. 48–49; DOL Br. 23–29. This argument is meritless and should be rejected. Courts routinely—and properly—look to reviewers' notes in the administrative record to *rebut* claimants' arguments that a reviewer did not consider a particular issue. Indeed, a case cited by DOL demonstrates this. In *Tracy O. v. Anthem Blue Cross Life & Health Insurance Co.*, No. 2:16-cv-422-DB,

2017 WL 3437672, at *10 (D. Utah Aug. 10, 2017),[12] the court pointed to "internal notes" to rebut the claimant's assertion that the plan's reviewers "failed to consider undisputed evidence in [her] medical records," and specifically the claimants' "treatment history."

That is precisely the purpose for which UBH has cited the reviewers' notes: not to provide explanation that was lacking from the decision letters, but to *rebut* arguments that the reviewers did not consider certain aspects of A.K.'s medical history. *See, e.g.*, App. Br. 40–41 (citing reviewer Case Notes to rebut assertion that the physician reviewers ignored A.K.'s symptoms before admission to Discovery). UBH thus does not rely on the reviewers' notes to "sandbag[ ]" them with "after-the-fact plan interpretations devised for purposes of litigation." DOL Br. 29 (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1191 (10th Cir. 2007)).[13]

---

[12] Decision affirming on appeal, 807 F. App'x 845 (10th Cir. 2020), cited at DOL Br. 32.

[13] DOL also relies (at 41–42) on *Glista v. Unum Life Insurance Co. of America*, 378 F.3d 113 (1st Cir. 2004). As explained in UBH's opening brief (at 41-42), *Glista* is off point because (1) it addresses disability, not health benefits, claims and (2) UBH is not trying to "defend a denial of benefits on the basis of a different reason than that articulated to the claimant." *Glista*, 378 F.3d at 115. Rather, UBH relies on the reviewers' (Continued…)

Claimants suggest that UBH should not be permitted to rely on the reviewers' notes, even to rebut their arguments, because those notes were not "communicated to Plaintiffs" as required by ERISA. Cl. Br. 48. Claimants misunderstand both the regulatory requirement and the case history. The regulations permit claimants to request internal plan documents, such as reviewer notes—but do not require the plan to otherwise provide those. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii) (describing "full and fair review" as one that provides claimants "*upon request* … reasonable access to, and copies of, all documents, records, and other information relevant to the" claim) (emphasis added). Here, Claimants' appeal letters show that—during the administrative process—Claimants asked for and received reviewers' internal notes. *See* App. Vol. 2 at 126

---

notes only to *rebut* Claimants' arguments that the reviewers' ignored Claimants' providers opinions and other evidence. One of the cases cited by DOL recognizes this distinction between reasons provided to support a denial in the first instance, and additional information provided in response to claimant challenges. *See Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013) (explaining that it is appropriate for a plan to provide additional factual information in subsequent denial letters if those facts "[did] not provide the [plan] with a different basis for affirming the Administrator's initial denial … but rather, it provide[d] the [plan] with a concrete affirmation that the Administrator's original assessment . . . was correct") (internal quotation marks and citation omitted).

(reprinting the text of "UBH Case Note[s]" from Dr. Kho and Ms. Dunning in A.K.'s parents' August 31, 2015 appeal letter), 127 (reprinting the text of Dr. Baker's case notes); Supp. App. Vol. 7 at 53–54 (exhibit attached to appeal letter showing reviewer notes); Supp. App. Vol. 8 at 24–34, 45 (fax sending scans of Ms. Dunning's and other reviewers' notes annotated by A.K.'s parents). A.K.'s parents even requested that MCMC "fully consider[]" "the UBH case notes" when conducting its external appeal review. App. Vol. 2 at 132.

Claimants' appeal letters also demonstrate that they fully understood the reason that benefits were denied for lack of lack of medical necessity. In each appeal letter, internal and external, they focused on the medical necessity issue, arguing that the continued residential care was medically necessary. App. Vol. 2 at 93 (stating that "[i]n order to support [the] conclusion that [A.K.'s] treatment [at Discovery] met UBH's definition of a residential treatment facility, was medically necessary, and active (not custodial) in nature, I will address each of the different issues brought up in" Dr. Baker's denial letter); *id.* at 128 (rebutting Dr. Manning's conclusion that "medical necessity was not met"). So this is not a case where the reviewer notes are relied on to

30

provide reasoning for the denial of benefits that was not made explicit in the Plan's decision letters. There is thus no reason for the Court to decline to consider the reviewers' notes for the purpose that UBH relies on them: to demonstrate that, contrary to Claimants' arguments, UBH did not ignore A.K.'s providers' opinions or other aspects of the record.

### C.     The reviewers' rationales were not inconsistent.

The expert reviewers who conducted a medical necessity analysis of A.K.'s file, including an independent third party, unanimously concluded that A.K.'s continuing residential services at Discovery were not medically necessary as defined by the Plan, so the denial letters were consistent. App. Vol. 2 at 57, 88, [MCMC]. That UBH's first two reviewers—Ms. Dunning and Dr. Kho—mistakenly denied benefits based on an exclusion that had been amended out of the Plan does not alter this analysis because neither analyzed medical necessity. App. Vol. 2 at 62 (Ms. Dunning stating only that A.K. "appear[ed]" to require residential treatment services); 77 (Dr. Kho stating the same). So their supposed conclusions as to the medical necessity of A.K.'s treatment, to the extent even discernible, are irrelevant.

Despite the plain language of Dr. Kho's letter, Claimants point to Dr. Kho's internal notes to claim he did, in fact, conduct a medical necessity analysis, and concluded residential care was medically necessary. In addition to being at odds with Claimants' argument that internal reviewer notes should be off the table at litigation, this argument fails on the facts. Dr. Kho's notes *and* denial letter indicate that Dr. Kho did *not* think that the treatment A.K. was receiving at Discovery met the Plan's standards for medical necessity because they were not consistent with generally accepted standards of care, backed by credible research supporting measurable outcomes, or clinically appropriate for A.K.'s mental illness. Supp. App. Vol. 5 at 167 (notes); App. Vol. 2 at 77 (letter).

Claimants assert two additional arguments in support of the district court's conclusion that UBH's denial letters were inconsistent: (i) the rationales for denying benefits articulated by MCMC and Drs. Baker and Manning rested on different bases; and (ii) the reviewers analyzed substantially the same Plan, so any inconsistencies between the denials were unreasonable. Cl. Br. 56. Neither argument is persuasive.

<u>First</u>, MCMC, Dr. Baker, and Dr. Manning all agreed that A.K. could have stepped down to a less intensive level of care and that medical

32

necessity had not been met. App. Vol. 2 at 57–58 (Dr. Baker stating the "why now" factors had been addressed), 88 (Dr. Manning stating the same), 143 (MCMC explaining that care is "medically necessary" if it is "safest, and most effective level of care" and A.K. "could have been treated in a therapeutic school environment"). Courts do not parse the exact details supporting denial in the manner either Claimants or the DOL advocate, so long as the central justification is apparent. *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 653–54 (5th Cir. 2009) (distinguishing *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006), where plan "mentioned a new, additional fact" in a subsequent denial); *accord Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 311 (5th Cir. 2015) (explaining plan had not "sandbagged" Claimant where the underlying justification for each denial remained constant).

<u>Second</u>, Claimants' argument that the Plan version considered by the initial two reviewers who inadvertently applied an out-of-date exclusion was substantially similar to the Plan version used by the three subsequent reviewers ignores the key difference: one version excluded coverage for Discovery's out-of-network services, while the other did not. The so-called "inconsistency" between the decisions of the reviewers who

relied on the earlier Plan versus those who relied on the later Plan obviously flows from that key difference, and does not reflect a substantive conflict between their views of the claim.

The DOL attempts to bolster Claimants' inconsistency argument by referring the Court to several out-of-jurisdiction cases. DOL Br. 30–31. They are inapplicable. UBH did not "hold[] in reserve" a "stronger" basis for denial until administrative appeal. *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 382 (2d Cir. 2002). Rather, Ms. Dunning and Dr. Kho simply made a mistake and analyzed the wrong version of the Plan. In none of the DOL's cases did a similar mistake occur. *See, e.g.*, *Rossi*, 704 F.3d at 368 (finding claim administrator did not comply with ERISA where it denied benefits on two different grounds and, on administrative appeal, relied on a third). Furthermore, benefit plans cannot waive issues of "the existence or nonexistence of coverage." *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000). "Medical necessity is required for [A.K.'s] reimbursement under the terms of the Contract and is therefore analogous to 'the existence or nonexistence of coverage[.]'" *Id.*; *Keiser v. CDC Inv. Mgmt. Corp.*, No. 99-cv-12101(WHP), 2003 WL 1733729, at *5 (S.D.N.Y. Mar. 25, 2003) (explaining that *Lauder's* rule

supports waiver only where it would not "expand the coverage" beyond what was bargained for in the plan).

Further, UBH's reviewers' initial mistake did not prejudice Claimants. When UBH realized its error, it effectively permitted D.K. and A.K. to restart the claim process, converting what would have been a second-level review to a first-level review, so as to afford them a full and fair opportunity to have their claim reviewed in accordance with ERISA. App. Vol. 2 at 84, 86. A.K. then received another internal review, this time by Dr. Manning. The claimants in DOL's cases did not get similar opportunities. *See Robinson*, 443 F.3d at 393 (holding that plan did not substantially comply with ERISA where claimant never had an opportunity to contest "new" denial basis); *Wenner v. Sun Life Assurance Co. of Can.*, 482 F.3d 878, 883 (6th Cir. 2007) (holding similarly where "final decision letter stated [ ] entirely new reason" for denying benefits).

Thus, UBH's initial denial of coverage as excluded, while mistaken, was not "inconsistent" with the three subsequent reviewers' medical necessity determinations. Given the district court's admission that those reviewers' conclusion that A.K. could have stepped down to a lower level

of care was reasonable on the record, this Court should reverse the decision below and uphold UBH's denial of benefits.

## III.   If the Court Finds That UBH's Decision Was Not Supported, Remand is the Appropriate Remedy.

Claimants agree that benefits cannot be awarded unless "the evidence in the record clearly shows that the claimant is entitled to benefits." Cl. Br. 60 (quoting *Flinders*, 491 F.3d at 1194). Claimants give no convincing reason why benefits should nonetheless issue here.[14]

Claimants argue that the Plan's decision was flawed because the reviewers did not adequately explain why they denied benefits and did not address A.K.'s providers' opinions. If correct, those are exactly the type of deficiencies that call for a remand to the Plan for further analysis, not an award of benefits. *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175–76 (10th Cir. 2006) (reversing award and remanding after concluding that denial of benefits was not supported by substantial evidence and decision-maker "failed to explain precisely how [she] reached her conclusion" because "we cannot say that there is no evidence in the record to support [the denial] decision, or that the evidence so

---

[14] DOL notably chose not to weigh in on this issue.

clearly points the other way"); *Raymond M. v. Beacon Health Options, Inc.*, 463 F. Supp. 3d 1250, 1286–87 (D. Utah 2020) (declining to award benefits despite finding denial arbitrary and capricious "because of . . . lack of adequate findings and explanations based on the record").

Claimants argue that a remand creates an "unfair 'heads we win; tails, let's play again' system of benefits adjudication[.]" Cl. Br. 61–62. But adhering to this Circuit's traditional approach simply recognizes that benefits should not issue unless the record clearly supports coverage. *See Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008) ("[I]f the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate.") (internal quotation marks and citation omitted). To instead award benefits anytime a claimant can identify some deficiency in the decision-making process or the denial letters would incentivize litigation, thwart employers' careful plan-design decisions, and drain plan resources, driving up member costs.

To avoid the clear mandate of this Circuit, Claimants suggest that a remand might violate the constitutional prohibition on advisory opinions. Cl. Br. 62. Hardly. Remanding UBH's decision would not cause

a constitutional crisis. It would be a full and final decision of the matter before the Court, determining the rights of the parties: for Claimants, to receive a more thorough decision, and for the Plan, to have the opportunity to reconsider the matter in light of the Court's views and address any deficiencies. Thus, while UBH believes that its denial decision was supported by substantial evidence, if this Court disagrees, it should reverse the award of benefits and attorneys' fees and direct the district court to remand the claim to UBH.

## CONCLUSION

The district court's decision overturning UBH's denial of benefits should be reversed. If the Court does not reverse, it should nonetheless vacate the grant of benefits and attorneys' fees and instruct the district court to remand the claim to UBH for further consideration.

/s/ Amanda Shafer Berman
Amanda Shafer Berman
Amy M. Pauli
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500

Jennifer S. Romano
CROWELL & MORING LLP
515 South Flower Street
40th Floor

Los Angeles, CA  90071
Phone: (213) 622-4750

*Counsel for Appellants*

## ORAL ARGUMENT STATEMENT

Appellants respectfully submit that oral argument should be heard in this appeal due to the importance of the underlying issues in this case, as well as the multiple issues in contention between the parties. Oral argument will also allow this Court to clarify any legal or factual issues raised by the papers.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set by the Court's March 21, 2022 order (Dkt. #10900495). Excluding the portions exempted by Rule 32(f), the brief contains 7,944 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing brief:

(1) all required privacy redactions have been made pursuant to 10th Cir. R. 25.5;

(2) if required to file additional hardcopies, that this ECF submission is an exact copy of those documents;

(3) this digital submission has been scanned for viruses with the most recent version of Microsoft Defender, and according to the program is free of viruses.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

## CERTIFICATE OF SERVICE

I certify that on April 15, 2022, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Tenth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Amanda Shafer Berman
Amanda Shafer Berman